Filed 9/14/22  In re K.G. CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re K.G. et al., Persons Coming Under the Juvenile Court Law. | B315068 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | Los Angeles County Super. Ct. No. 21CCJP01113A,B |
| Plaintiff and Respondent, | |
| v. | |
| SAMANTHA G., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Mary E. Kelly, Judge.  Affirmed.

Law Offices of Vincent W. Davis & Associates and Vincent W. Davis for Defendant and Appellant.

Dawyn R. Harrison, Acting County Counsel, Kim Nemoy, Assistant County Counsel, and Melania Vartanian, Deputy County Counsel, for Plaintiff and Respondent.

_____

Samantha G. appeals jurisdictional findings she physically abused her children and a dispositional order removing them from her custody. We exercise our discretion to review her appeal and affirm. Undesignated statutory references are to the Welfare and Institutions Code.

I

Samantha G. is the mother of twin seven-year-old daughters, K.G. and C.G. The father lives in Pennsylvania. A family law order from Massachusetts provided the mother with sole legal and physical custody of the children and the father with a minimum of four weeks visitation per year.

The family has a history with child services in Massachusetts. That department had received allegations of neglect and domestic violence between the mother and the maternal grandparents, with whom she and the children lived at the time. In May 2020, the maternal grandfather assaulted C.G. and choked her. The mother stopped him when she heard C.G. screaming and took the girls to the father's home. In July 2020, the mother moved the children to California, where her boyfriend lives. She said she moved to protect the children from the maternal grandfather.

On February 1, 2021, C.G. went to school with her arm in a sling. At first she said she fell, but then said, "My mom told me to lie, my mom pushed me. I was standing on her tablet, and she pushed me, and I fell." K.G. confirmed the mother shoved C.G. and made her fall after C.G. broke a tablet screen. Both girls reported the mother frequently spanked them hard enough to leave marks and the boyfriend also spanked them. K.G. said she

dreams about the mother shouting at her and that she would "teach her mother how to take a deep breath."

The mother denied pushing C.G. She said C.G. had broken a tablet, was running around, and tripped. The mother tried to grab her but missed—she said, "I think it's actually getting mixed up with shoving." The mother took C.G. to the hospital the next day because C.G. could not lift her arm. Doctors discovered C.G. had a fracture in her left shoulder through the neck of the humerus.

The mother said she used to spank the children with a single spank over clothes and denied leaving marks. She said she had "made a deal with my brother in law not to do it" anymore. She suspected the children were traumatized by the grandfather's abuse and her own use of physical discipline. The mother reported she smoked marijuana and occasionally drank alcohol but denied illicit drug use or alcohol problems. She also reported having anxiety and panic attacks and said she had experienced suicidal thoughts in the past, during the "situation with [the twins'] father and maternal grandfather."

On March 4, 2021, the juvenile court approved a removal order. On March 9, the Los Angeles County Department of Children and Family Services filed a section 300 petition alleging the mother physically abused the children, had a history of mental and emotional problems and domestic violence, endangered the children by allowing her boyfriend to physically abuse them, and was an abuser of marijuana. On March 12, the juvenile court ordered the children detained in foster care.

At the April 9, 2021 adjudication hearing, the mother testified she never pushed or injured C.G. or instructed C.G. to lie. She said she only spanked K.G. once without leaving a mark

3

and her boyfriend did not physically discipline the children. She said she had enrolled in parenting, anger management, and narcotics classes, Narcotics Anonymous, and therapy. She said she did not consider herself an addict but wanted to prove she would do anything for her children. The court paused proceedings to deal with an emergency and continued the adjudication hearing to April 29.

On April 29, 2021, the juvenile court sustained the petition in its entirety, found by clear and convincing evidence there was no reasonable means to protect the children's physical safety without removal, and continued the hearing to consider whether the children should be released to the father in Pennsylvania.

At the July 30, 2021 adjudication hearing, the mother testified that she had nearly finished her parenting program. She described coping strategies she had learned in her anger management class and a "toolkit" for avoiding domestic violence. She also described her personal progress in therapy. The court continued the hearing to August.

On August 12, 2021, the court dismissed the allegations of domestic violence between the parents as remote in time. The court did not find the mother's testimony about her case plan progress compelling and thought "she looked off" when she testified. It sustained the rest of the petition and found by clear and convincing evidence the children must be removed from the mother. The court did not make this finding as to the father. The mother appeals the August 12, 2021 removal order.

As a preliminary matter, we note that during the pendency of this appeal, the juvenile court terminated its jurisdiction over the children and granted the father sole legal and physical custody with monitored visits for the mother. We take judicial

notice of these May 25, 2022 and June 3, 2022 minute orders. (See Evid. Code, § 452, subd. (d).) An appeal becomes moot when, through no fault of the respondent, an event makes it impossible for the appellate court to grant the appellant effective relief. (*In re Jessica K.* (2000) 79 Cal.App.4th 1313, 1316.) We generally dismiss an appeal where reversal will have no practical effect. (*In re Dani R.* (2001) 89 Cal.App.4th 402, 404.) That is the case here, where the court has terminated jurisdiction and issued a new custody order. Out of an abundance of caution, we nonetheless exercise our discretion to consider the merits of the mother's appeal. (See *In re Daisy H.* (2011) 192 Cal.App.4th 713, 716.)

## II

First the mother challenges the jurisdictional findings she abused the children. The mother admits in her reply brief she did not individually challenge the allegation she failed to protect the children from *her boyfriend's* abuse. This allegation may serve as an independent basis for affirming juvenile court jurisdiction. (See *In re Briana V.* (2015) 236 Cal.App.4th 297, 310–311.) We generally view such challenges as nonjusticiable. (*Id.* at p. 308; see generally *In re I.A.* (2011) 201 Cal.App.4th 1484, 1489–1495.)

However, the mother argues the jurisdictional findings against her could prejudice her in current or future dependency proceedings or have other consequences for her. For this reason, we exercise our discretion to review the findings against the mother that the children suffered or there was a substantial risk they would suffer serious physical harm due to the mother's abuse or neglect. (See § 300, subd. (a), (b), & (j); *In re A.R.* (2014) 228 Cal.App.4th 1146, 1150.)

5

The juvenile court looks at the totality of the circumstances in determining whether a child is at substantial risk of harm to support jurisdiction under section 300. (*In re J.K.* (2009) 174 Cal.App.4th 1426, 1439–1440.) We review the juvenile court's findings for substantial evidence. (*In re R.T.* (2017) 3 Cal.5th 622, 633.) We examine the record as a whole in the light most favorable to the judgment, draw all reasonable inferences in its support, and defer to the court's credibility findings. (*Ibid*.)

The mother argues there was no substantial evidence C.G.'s injury was nonaccidental. She says it is merely "the child's perception" that she pushed C.G., and "there were no medical findings that the child's injury [occurred] nonaccidentally."

The mother's arguments miss the mark. Substantial evidence does not require a medical finding about accident or intent. The juvenile court found credible C.G. and K.G.'s consistent reports the mother spanked them hard enough to leave marks and pushed C.G. "really hard." C.G. suffered a medically verified bone fracture as a result of the fall. The court did not believe the mother, who denied causing C.G. any injury or spanking the children regularly. We defer to the court's credibility findings.

Pushing to the ground a child already traumatized by physical abuse and fracturing a bone is serious physical harm. Spanking hard enough to leave marks is not reasonable discipline. C.G. sustained a serious injury, and K.G. also was at risk. The mother did not accept responsibility for injuring C.G. or spanking the children. There was sufficient evidence of physical abuse and that the risk of abuse was likely to continue. We need not reach other risks created by the mother's marijuana use and

6

mental health issues.  We affirm the court's jurisdictional findings.

III

Next the mother argues the juvenile court erred by removing the children because substantial evidence did not show removal was the only means to protect them.  She points out that by the time of the August 12, 2021 hearing, she had almost completed her case plan, had participated in more programs than required, and testified to gaining knowledge from her programs.

The juvenile court found by clear and convincing evidence there was no reasonable means to protect C.G. and S.G. without removal from the mother's care.  (See § 361, subd. (c)(1).)  On appeal, the question before us is whether the record contains substantial evidence such that a reasonable fact finder could have found it highly probable this fact was true. (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1011–1012 (*O.B.*).)

Substantial evidence supports the court's removal order. The court noted the children were traumatized as a result of the mother's direct abuse as well as keeping the children with the maternal grandfather in Massachusetts despite his abuse.  The juvenile court did not find the mother's testimony credible and said she "looked off" when describing her case plan progress.  In addition, a case worker had confirmed the mother's attendance and participation but said the mother had not yet shown accountability for her actions or demonstrated insight into her problems and needed mental health services to deal with her own trauma.

We will not disturb the court's credibility findings.  (See *O.B.*, *supra*, 9 Cal.5th at p. 1008.)  On these facts, a reasonable fact finder could find it highly probable the children were at risk

7

of harm in the mother's custody and removal was necessary to protect them from further injury. The mother's progress in her programs is laudable but alone does not make the court's determination unreasonable, especially given the court's credibility findings against her. We affirm the removal order.

## DISPOSITION

The orders are affirmed.


WILEY, J.

We concur:


GRIMES, Acting P. J.


HARUTUNIAN, J.[*]

---

[*] Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.